**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**


CHARLES E. BARNETT, et al.,

                Plaintiffs,

v.                                                          CIVIL ACTION NO.   5:12-cv-01471
                                                            Adversary Proceeding No. 1:11-ap-01009

DUTCH RUN-MAYS DRAFT, LLC,

                Defendant.


::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

STEPHEN C. WICKLINE, et al.,

                Plaintiffs,

v.                                                          CIVIL ACTION NO.   5:12-cv-01472
                                                            Adversary Proceeding No. 1:11-ap-1010

DUTCH RUN-MAYS DRAFT, LLC,

                Defendant.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed the docket of two separate, but related, civil actions that were removed to the United States Bankruptcy Court for the Southern District of West Virginia from the Circuit Court of Greenbrier, County, West Virginia.   The Bankruptcy Court subsequently transferred the matters to this Court.   In its consideration of the docket in these cases, the Court finds that the parties have submitted nearly identical motions for relief, wherein they pursue a determination of the proper forum to resolve their disputes.

To that end, the Court has reviewed Defendant/Debtor's *Motion for Change of Venue Pursuant to 28 U.S.C. § 1412 from the United States Bankruptcy Court for the Southern District of West Virginia to the United States Bankruptcy Court for the Southern District of Florida* ("Def.'s Mot.") (Document 1-5), as well as Plaintiffs' *Motion to Abstain and Remand to Circuit Court for Greenbrier County, West Virginia* ("Pls.' Mot.") (Document 1-10).[1]   Upon consideration of the parties' motions, the oppositions, the replies and the entire record, the Court finds that Defendant's motions should be denied and Plaintiffs' motions should be granted.

## I.     BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.  The Barnett Action

In the fall of 2006, Plaintiffs, Charles E. Barnett, Harold G. Barnett, Betty B. Woomer and Edward G. Wenz, Substitute Successor Trustee of a 1982 Revocable Living Trust, ("the Barnetts") initiated a civil action in the Circuit Court of Greenbrier County, West Virginia, seeking a determination of an easement, injunctive relief and damages against Defendant, Dutch Run-Mays Draft, LLC, ("Dutch Run").   Dutch Run "is a single asset real estate property that owns approximately 5,000 acres of real property adjoining the Greenbrier Hotel" with its "corporate office located in Deerfield Beach, Florida[.]" (Respondent, Dutch Run-Mays Draft LLC's Status Report ("Dutch Run Stat. Rept.") (Document 6) at 2.)   The Barnetts alleged that they own a certain tract of land situated in the White Sulphur District, Greenbrier County, West Virginia that is contiguous to land owned by Dutch Run, that Dutch Run's predecessor-in-interest granted them an assignable 30-foot right-of-way and easement over the land now owned by Dutch Run, and that

---

1     In light of the identical arguments asserted in these separate matters, the court will predominately cite to the written submissions in only one case.  Unless otherwise noted, any citations to the parties' arguments and submissions will be to the docket in *Barnett v. Dutch Run-Mays Draft LLC*, Civil Action No. 5:12-cv-1471.

Dutch Run has placed, or caused to be placed, a locked gate and several large boulders along the easement to obstruct the easement and to block their access to their land.   (Notice of Removal Based Upon 28 U.S.C. § 1452 & Rule 9027 of the Federal Rules of Bankruptcy Procedure, Ex. A, Amended Petition (Document 1-1) at 63-70).   As a result of the alleged obstruction, the Barnetts alleged that they have lost rental revenue from the West Virginia Sportsman's Hunting Club and have been prevented from using their land to conduct a timber business. (*Id*. at 65-66). Alternatively, Plaintiffs alleged that if their specific easement conveyance is found invalid, they have an easement over Dutch Run's property by necessity or by operation of law.   (*Id*. at 67-69).

The parties litigated this matter for several years in the state court.   On September 20, 2011, Judge Joseph C. Pomponio, Jr. of the Circuit Court of Greenbrier County, West Virginia, scheduled a hearing on Defendant's motion for summary judgment for October 21, 2011, and scheduled a bench trial for October 24, 2011.   (Plaintiffs' Status Report ("Pls.' Stat. Rept."), Ex. A, Pre-Trial Order (Document 7-1) at 2, 9).

### B.  The Wickline Action

Nearly two years after the initiation of the *Barnett* matter, Plaintiffs, Stephen C. Wickline, Jennifer L. Wickline, Randy L. Wickline, Jack W. Hudnall, Richard Glover, Evelyn Justice, by her attorney-in-fact, Richard M. Justice, Charles D. Justice, III, Kathy B. Gunter, Lisa Jean Justice, Patricia L. Feury, and Gerald Earnest Justice ("the Wicklines"), commenced their civil suit in the Circuit Court of Greenbrier County to establish a prescriptive easement against Dutch Run. (Notice of Removal Based Upon 28 U.S.C. § 1452 & Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Notice of Removal"), Ex. A, Petition to Establish Prescriptive Easement ("Wickline Pet."), *Wickline v. Dutch Run-Mays Draft, LLC*, Civil Action No. 5:12-1472,

3

(Document 1-1) at 9-37.   Similar to the Barnetts, the Wicklines alleged that they own certain tracts of land situated in the White Sulphur District in Greenbrier County that is contiguous to land owned by Dutch Run, that each Plaintiff, through their predecessors-in-title, enjoyed open, continuous and uninterrupted use of a roadway that traverses over a portion of Dutch Run's property for a period exceeding seventy years, that subsequent to purchasing its land, Dutch Run blocked and prevented any vehicular access to the roadway, and that without use of the roadway, their property is land-locked.   (Wickline Pet. at 24).   As a result of the alleged obstruction, the Wicklines averred that they have lost all access to their real estate and all use and enjoyment of their property. Consequently, these Plaintiffs requested an order of prescriptive easement and an injunction requiring Dutch Run to remove all obstructive items to the disputed roadway to allow the ingress and egress of their property. (*Id*. at 25.)[2]   On November 16, 2010, Judge Pomponio scheduled a December 6, 2010 bench trial. (Plaintiffs' Status Report, Ex. A, Amended Pre-Trial Order, *Wickline v. Dutch Run-Mays Draft, LLC*, Civil Action No. 5:12-1472, (Document 8-1) at 2, 9).   In their Status Report, the Wicklines assert that the Greenbrier Court scheduled a trial in this case on October 4, 2011.   However, neither the record, nor the parties, reveal why the December 6, 2010 trial date was not kept.

     *C.  Removal Proceedings*

     On September 30, 2011, less than one week before the scheduled trial in the *Wickline* matter, Dutch Run filed a voluntary petition for relief pursuant to Chapter 11 of Title II of the United States Code in the Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale

---

2    On July 1, 2008, Dutch Run removed this action by invoking this Court's diversity jurisdiction. The Plaintiffs sought the remand of the action back to state court.   On April 2, 2009, the Honorable Thomas E. Johnston concluded that the Defendant failed to satisfy its burden in demonstrating that the requisite amount-in-controversy requirement could be met and granted Plaintiffs' motion to remand.   *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F.Supp.2d 633 (S.D. W. Va. 2009).

Division, Case No. 11-37471-JKO.   (Dutch Run's Stat. Rept. at 1.)   On October 7, 2011, Dutch Run removed both state court actions to the United States Bankruptcy Court for the Southern District of West Virginia ("Bankruptcy Court").[3]   (Notice of Removal Based Upon 28 U.S.C. § 1452 & Rule 9027 of the Federal Rules of Bankruptcy Procedure (Document 1-2) at 1-4.)   Since none of these parties had a pending bankruptcy matter in that court, the removed actions became Adversary Proceedings: *In re Dutch Mays-Run Draft, LLC*, Adversary Proceeding No. 1:11-ap-01009) and *In re Dutch Mays-Run Draft, LLC*, Adversary Proceeding No. 1:11-ap-01010).   Plaintiffs maintain that prior to the removal, their respective state court actions were stayed due to Dutch Run's Bankruptcy Petition.[4]

Thereafter, on October 13, 2011, Dutch Run sought to transfer venue from the Bankruptcy Court in this jurisdiction to the United States District Court for the Southern District of Florida. (Document 1-5).   On October 21, 2011, Plaintiffs requested the Bankruptcy Court to enter an order abstaining from hearing the Adversary Proceeding and to remand the matter back to the Greenbrier Circuit Court.   (Document 1-10).[5]   On December 16, 2011, the Honorable Ronald G. Pearson, United States Bankruptcy Judge, conducted a motions hearing on the parties' respective submissions and requested supplemental briefing.   At the hearing, Judge Pearson received argument on both motions, learned about the status of the Chapter 11 petition, expressed concern about problems with both requests for relief, inquired whether the parties could resolve the forum

---

3    In this jurisdiction, "pursuant to 28 U.S.C. § 157(a), all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition. Filings in bankruptcy actions shall be made directly with the Clerk of the Bankruptcy Court."  LR Civ. P. 83.13.

4    Section 362(a)(1) of Title 11 of the United States Code establishes an automatic stay of all proceedings "commenced or [that] could have been commenced against the debtor" at the time the debtor initiated a Chapter 11 proceeding. 11 U.S.C. § 362(a)(1).  The Court observes that Plaintiffs have not filed any motion in any court to request relief from the stay to allow the advancement of their claims against the Defendant.

5    *See supra* n.1.

dispute without judicial intervention, and requested the parties to submit supplemental briefing on their respective positions relative to *Dunlap v. Friedman's Inc*., 331 B.R. 674 (S.D. W. Va. 2005) (Copenhaver, J.).   On January 23, 2012, the Bankruptcy Court entered an order indicating that the matter would be taken under advisement.

On May 9, 2012, after concluding that it lacked the authority under 28 U.S.C. § 1412 to evaluate the parties' motions, the Bankruptcy Court transferred the action to this Court.   (Order Transferring Removed Case to the United States District Court for the Southern District of West Virginia ("Transfer Order") (Document 1) at 1-2).[6]   Contemporaneously with its Order, the Bankruptcy Court presented this Court with a proposed order recommending that this Court transfer this action to the Bankruptcy Court for the Southern District of Florida.   (Transfer Order, Attachment 1, Recommended Order Transferring Case to the Southern District of Florida, ("Recommended Order") (Document 1) at 3-8).   The Bankruptcy Court found that its consideration of the convenience of the parties, relative to 28 U.S.C. § 1412, and the presumption that the "home court" of the Bankruptcy consider the motions to remand, counseled towards granting Defendant's motion and "preserv[ing] . . . the issues raised by [Plaintiff's Motion for the Florida Bankruptcy Court to] consider[] along with [any] motion to lift the automatic stay to allow the [state court] matter to proceed."   (Recommended Order at 7-8.)[7]

Thereafter, on June 13, 2012, this Court ordered the parties to advise the Court of:

    1)   The current status of the bankruptcy proceeding in Florida; and

---

6    Section 1412 of Title 28 of the United States Code provides:

>    A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

7    *See supra* n.4.

2)   Whether there has been any change in the parties' positions as to transfer since the issuance of the ruling and proposed order by the West Virginia Bankruptcy Court.

(Order (Document 4)).   The Court has reviewed the parties' respective status reports, wherein the general consensus is that the parties' positions were not altered by the Bankruptcy Court's Transfer Order or Recommended Order.   Instead, Dutch Run asserts that "the disposition of [the State Court Actions] have a direct effect on [its] ability to reorganize and present a confirmable plan" in its Chapter 11 bankruptcy case; that it has moved to extend, and indeed received, an extension of the Section 362 Deadline and the Plan Deadline in the Chapter 11 case, and that it requests this Court enter the Recommended Order to transfer the action. (Dutch Run's Stat. Rept. at 3, 6.)   Plaintiffs represent that "no trustee has been appointed [in Dutch Run's Chapter 11 bankruptcy case] and [that Dutch Run] continues to operate its business and manage its real estate in West Virginia as a debtor in possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code."   (Pls.' Stat. Rept. at 2.)   Therefore, the Court will consider the parties' motions below.[8]

In consideration of the parties' motions, this Court must consider whether subject matter jurisdiction exists over the removed actions and, if so, which motion should be considered first, Dutch Run's motion to transfer venue or Plaintiffs' motion to abstain and remand.

---

[8]   Dutch Run asserts that it is a party to at least two other civil actions where the relief sought is the same as that pursued in these removed actions.   One such case has previously been transferred to the United States Bankruptcy Court for the Southern District of Florida by the Bankruptcy Court of the Southern District of West Virginia.   It appears that the parties to that civil action did not challenge the jurisdiction of the court nor contest the transfer.   The record does not reveal that there has been any resolution of that matter in the Southern District of Florida.

## II.    APPLICABLE LAW

Generally, an action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction.   28 U.S.C. § 1441(a).   In the context of bankruptcy actions, "a party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."   28 U.S.C. § 1452(a).[9]   Section 1334 defines a district court's jurisdiction over bankruptcy proceedings.   In doing so, it provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11."   28 U.S.C. § 1334(b) (emphasis added).

If a district court finds that subject matter jurisdiction exists, the court's inquiry does not stop there.   Once an action is removed, there is no guarantee that the matter will remain in the district court.   At least three provisions of the Bankruptcy Code provide varying avenues by which a court may abstain and remand a matter back to state court.   Section 1334 contains both a permissive and mandatory abstention provision, while Section 1452(b) provides for a remand on equitable grounds.[10]   Despite the vehicle of remand sought by a moving party, a district court is

---

9    Rule 9027 of the Federal Rules of Bankruptcy Procedure provides the procedures by which an action may be removed.

10    Section 1334 of the Title 28 states as follows:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not

8

still charged with adhering to the long-settled remand principles.   *See 3rd Time Trucking, LLC v. Massachusetts Mut. Life Ins. Co.*, No.3:11-cv-068, 2011 WL 4478491, *2 (N.D. W. Va. Sept. 26, 2011) (quoting *Things Remembered*, 516 U.S. at 128) ("The United States Supreme Court has established that removal and remand principles apply in both bankruptcy and non-bankruptcy proceedings.")   Certainly, the party seeking to adjudicate a matter in the district court carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter.   *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted).   In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction."   *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

---

have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).   Additionally, a remand may be had on equitable grounds as set forth in Section 1452(b):

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b).

9

*III.     DISCUSSION*

*A.  Subject Matter Jurisdiction*

"When presented with a motion to remand a proceeding which has been removed from state court, the bankruptcy court [or district court] must first evaluate whether the state court action was properly removed; that is, it must determine whether it has subject matter jurisdiction over the proceeding." *Work/Family Directions, Inc. v. Children's Discovery Ctr., Inc., (In re Santa Clara County Child Care Consortium)*, 223 B.R. 40, 44 (1st Cir. 1998); *In re Asbestos Litigation*, 271 B.R. 118, 120-21 (S.D. W. Va. 2001) (district court began its review of removed action by determining whether subject matter jurisdiction existed).   This determination requires a court to "decide whether the removed action is one arising under or arising in a case under title 11 or is an action 'related to' a case under title 11." (*Id.*)   A proceeding "arising under," Title 11 is one that involves a cause of action created by the Bankruptcy Code or a plaintiff's right to relief is determined by a statutory provision or a substantial question of the Bankruptcy Code.  *Global Express Money Orders, Inc. v. Farmers & Merch.'s Bank* (*In re Colleen, Inc.*), 406 B.R. 674, 678 (Bankr. D.Md. 2009); *Sharif v. IndyMac Bank* (*In re Sharif*), 411 B.R. 276, 280 (Bankr.E.D.Va. 2008) (citation omitted).   For instance, this type of proceeding would be invoked by "an action by the trustee to avoid a preference." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). In contrast, a civil proceeding "arising in" Title 11 is a proceeding that is "not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy."  *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 86 F.3d 364, 372 (4th Cir.), *cert denied*, 519 U.S. 993 (1996) (citing *In re Wood*, 825 F.2d at 97).   In this vein, "the filing of a proof of claim or an objection to the discharge of a debt" would serve as a

10

proceeding "arising in" bankruptcy. (*In re Wood*, 825 F.2d at 97).   However, with respect to the

final category of proceedings, the Court of Appeals for the Fourth Circuit has adopted the *Pacor*

test to determine whether a civil proceeding "relates to" a title 11 action.   *Owens-Illinois, Inc. v.*

*Rapid American Corp., (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor, Inc.*

*v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overturned on other grounds*, *Things Remembered,*

*Inc., v. Petrarca*, 516 U.S. 124 (1995)).   Pursuant to this test, a court has to consider

> whether the outcome of that proceeding could conceivably have any
> effect on the estate being administered in bankruptcy. The
> proceeding need not necessarily be against the debtor or against the
> debtor's property. An action is related to bankruptcy if the outcome
> could alter the debtor's rights, liabilities, options or freedoms of
> action (either positively or negatively) and which in any way
> impacts upon the handling and administration of the bankrupt estate.

*Pacor*, 743 F.2d at 994 (internal citations omitted).

    In these removed actions, the underlying dispute concerns whether Dutch Run's property is

encumbered by an easement (be it by deed or claim of right) in favor of the Plaintiffs and, if so,

whether Dutch Run's obstruction of any right-of-way has resulted in harm.   In light of the

principles above, it is readily apparent that Plaintiffs' underlying claims do not arise under or in the

Bankruptcy Code.   The relief sought by Plaintiffs is not derived or created from Title 11.

Likewise, the nature of the removed actions is not dependent upon the Bankruptcy Code since the

claims exist wholly outside of Title 11.   Instead, the removed actions are characteristic of a

"related to" proceeding.   There should be no dispute that the outcome of the Plaintiffs' claim will

have an effect on the estate being administered in bankruptcy.   The record reveals that the

predominate portion of Dutch Run's bankruptcy estate is comprised of the 5000 acres of land

situated in Greenbrier County.   The presence of an easement on the property of another may

11

impact the value of the burdened land, a circumstance dependent upon the use of the land, the use of the easement, and the extent of the encumbered portion of the burdened property.   The parties have not presented any evidence depicting whether Dutch Run's bankruptcy estate asset will be positively or negatively affected by any finding of a valid easement.   However, Plaintiffs have asserted that they have been damaged by Dutch Run's obstruction of the purported easement. The Barnetts have contended that they have suffered a loss in their timber business, as well as, in its hunting lease. The Wicklines contend that they have been denied the full use and enjoyment of their property. In either instance, any award of damages against Dutch Run will impair the rights and liabilities of its bankruptcy estate. The Fourth Circuit has noted that "the *Pacor* test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate.   The possibility of such alteration or impact is sufficient to confer jurisdiction."   (*In re Celotex Corp.* 124 F.3d at 626 (citing *Pacor*, 743 F.2d at 994.)   Accordingly, this Court has "related to" subject matter jurisdiction over the removed actions.

### B.  The Competing Motions

The aforementioned conclusion does not end the dispute *sub judice*. A district court may be required, under Section 1334(c)(2), to abstain from hearing the matters or permitted to employ its discretion to remand the case to state court, pursuant to either Section 1334(c)(1) or Section 1452(b). This requires the Court to turn its inquiry to the question of which of the two pending motions should be considered first.   Dutch Run contends that this Court should consider its motion first, and upon a finding that venue is proper in the Bankruptcy Court in Florida, allow that court to consider Plaintiffs' motion.

This Court appreciates that there is a split of authority relative to the determination of which court is in the best position to consider the underlying issues of a motion to abstain or remand. *See Rayonier Wood Products, LLC v. Scanware, Inc. (In re Scanware, Inc.)*, 411 B.R. 889, 895-96 (Bankr.S.D.Ga. 2009) (collecting cases accounting for the split in authorities). The Georgia Bankruptcy Court, in *In re Scanware,* incisively discussed the rationale behind the opposing views.   The Court explained that some courts agree with the position asserted by Dutch Run-- that the bankruptcy court in which the bankruptcy estate is pending (known as the "home court") should determine motions to remand.  This consideration is based upon the theory that "the local bankruptcy court [i]s a mere conduit with [a] little role in determining where the removed lawsuit should be heard."  (*In re Scanware*, 411 B.R. at 896) (citation omitted.)   This theory is borne from: the perceived familiarity of the home court with the pending bankruptcy case and its consideration of what would be required for efficient administration of that proceeding, the home court's consideration of its own expertise in the areas of law forming the basis of the bankruptcy and its view of its own scheduling and time constraints. (*Id.*)   Additionally, it has been asserted that allowing the home court to rule on a remand motion will minimize conflicts of authority between the courts.   (*Id.*)   The Georgia Bankruptcy Court also considered the rival line of cases which hold that the bankruptcy court, to which the action was removed, "has the right to decide a pending motion to abstain or remand before determining whether venue is proper in the home bankruptcy court."   (*Id.*) (citing *Frelin v. Oakwood Homes Co.*, 292 B.R. 369, 379 (Bankr. E.D. Ark. 2003)).   This theory finds support in the statutory language of Section 1452(b) and Section 1412.   In Section 1452(b), a court is given the discretion to remand a removed action back to state court on equitable grounds, suggesting that the local court should have an active role in the

13

removal. (*Id.* at 897).   Section 1412, which governs the transfer of a case from a local bankruptcy court to a home bankruptcy court, affords a district court the discretion to do so, "in the interests of justice or for the convenience of the parties." 28 U.S.C. § 1412.   This provision does not establish an automatic or mandatory transfer, but rather a discretionary, counseled consideration of the totality of the circumstances and the impact of the transfer on the parties, the removed action and the bankruptcy estate.   The Georgia Bankruptcy Court concluded that the "statutory and logical support" of this line of authority was more appropriate, given that the very language of the two statutes provide "support that [the local] court has the responsibility to make the decision of whether to transfer the case to the home bankruptcy court or remand the matter to state court."   (*In re Scanware*, 411 at 897.) (citations omitted).   This Court is so persuaded.   This Court has also considered the general principals of removal/remand law and given due regard to a party's ability to select the forum of their choosing.   These considerations support this Court's decision to proceed directly with the Plaintiffs' motion to abstain or remand.[11]   This decision is further bolstered by *In re Tidewater Lodging Group, LLC*, Bankruptcy No.08-25694, 2009 WL 909417 (Bankr.S.D.Fla. Apr. 3, 2009) (wherein the court determined it proper for the local bankruptcy court to consider a motion to remand first before considering a motion to transfer because the motion to remand is dispositive.)[12]

### C.  Mandatory Abstention

Plaintiffs assert that this Court is required to abstain from considering the state court

---

11    Both of the parties have cited to *Dunlap v. Friedman's Inc.*, for the proposition that there is a presumptive suitability that the home court is to hear "related to" matters.   However, that case is notably distinguishable from this matter, because that court did not have before it competing motions with respect to forum.   The plaintiffs in that case did not seek a remand back to the state court.   *Dunlap*, 331 B.R. at 676.

12    It is not lost on this Court that this determination was made by the very court to which Dutch Run seeks a transfer, the United States Bankruptcy Court for the Southern District of Florida.

actions, pursuant to the mandatory abstention provision of Section 1334(c)(2).   Alternatively, if it

is determined that mandatory abstention is inapplicable, Plaintiffs contend that the principles of

permissive abstention and equitable remand apply.   The Court will begin with Plaintiffs' primary

contention --- that this Court is required to abstain from hearing their claims and remand the

separate cases back to the Circuit Court of Greenbrier County.   Section 1334(c)(2) requires a

court to "abstain from hearing . . . a proceeding if an action is commenced, and can be timely

adjudicated, in a state forum of appropriate jurisdiction."   28 U.S.C. 1334(c)(2).   According to

this mandatory abstention provision, a district court must abstain if the following elements are met:

(1) the party must have filed a timely motion to abstain; (2) the proceeding must be based on a state

law claim; (3) the proceeding must be non-core; (4) no basis for federal court jurisdiction can exist

other than [Section] 1334; (5) an action must have been commenced in state court; and (6) the state

court action can be timely adjudicated.   *Caperton v. A.T. Massey Coal Co., Inc.*, 270 B.R. 654,

656 (S.D. W. Va. 2001) (citing *Shaia v. Brown (In re Brown)*, Nos. 95-34782-T, 96-3125, 1996

WL 757100, *3 (Bankr.E.D.Va. Dec. 5, 1996)).

In this case, Dutch Run does not dispute that Plaintiffs timely moved to abstain.   This is so

because Plaintiffs sought a remand fourteen (14) days after Dutch Run removed both state court

actions.   There is no question that the state court actions are based on state law inasmuch as they

concern property rights governed by West Virginia law.   Indeed, no party claims that federal law

has been invoked by any of the asserted claims. To that end, jurisdiction in this Court cannot be

invoked by a federal question, 28 U.S.C. § 1331.   Notwithstanding Dutch Run's assertion

otherwise, it has not been shown that diversity jurisdiction exists. (*See* Respondent's Supplemental

Brief in Support of Motion For Change of Venue Pursuant to 28 U.S.C. § 1412 From the United

15

States Bankruptcy Court for the Southern District of West Virginia to the United States Bankruptcy Court for the Southern District of Florida (Document 1-24) at 5.) (Dutch Run discusses its citizenship for the purposes of subject matter jurisdiction.)   Dutch Run's citizenship is immaterial to the Court's determination in this instance inasmuch as the record is devoid of any evidence that the requisite jurisdictional amount-in-controversy can be met.  *See* 28 U.S.C. § 1332.   Therefore, the Court finds there is no basis to assert this Court's jurisdiction other than pursuant to 28 U.S.C. § 1334.   Likewise, there is no dispute that the removed actions were commenced in state court or that the Circuit Court of Greenbrier County is a state forum of appropriate jurisdiction.

Additionally, as set forth in § 157(a), Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case and those that are "related to a case under title 11." *Stern v. Marshall*, 131 S.Ct. 2594, 2596 (2011).   A matter is considered a core proceeding if it "arises under" Title 11 or "arises in" a case under Title 11.   28 U.S.C. §157(b)(1); *Stern*, 131 S.Ct. at 2605.   The Bankruptcy Code provides a non-exhaustive list of sixteen different types of matters that constitutes core proceedings.[13]   In its

---

[13]   Core proceedings include, but are not limited to:

    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 , but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
    (C) counterclaims by the estate against persons filing claims against the estate;
    (D) orders in respect to obtaining credit;
    (E) orders to turn over property of the estate;
    (F) proceedings to determine, avoid, or recover preferences;
    (G) motions to terminate, annul, or modify the automatic stay;
    (H) proceedings to determine, avoid, or recover fraudulent conveyances;
    (I)  determinations as to the dischargeability of particular debts;
    (J)  obligations to discharges;
    (K) determinations of the validity, extent, or priority of liens;

16

Notice of Removal, Dutch Run asserts that Plaintiffs' civil actions contain claims that are "both core and non-core claims"; that the removed cases are "core matter[s] pursuant to 28 U.S.C. §§ 157(b)(2)(A),(M),and (O)"; that the removed cases "affect[] the . . . property of the bankruptcy estate"; and that Plaintiffs' claims are "related to the bankruptcy case pending in this district and is a non-core matter which should be removed due to this Court's jurisdiction."   (Notice of Removal (Document 1-1) at 3.)   Dutch Run does not identify which claims it believes represent core proceedings or any authority for the proposition that matters that arise neither under Title 11 nor in Title 11 can be properly determined to be a core proceeding.   This Court has previously found that the removed actions are "related to" a Title 11 case and are not proceedings which arise under or in a Title 11 case.   Section 157 "does not provide for a proceeding that is simultaneously core and yet only related to the bankruptcy case." (*Stern*, 131 S. Ct. at 2605).   The Supreme Court further stated that it was "a contradiction in terms [because] [i]t does not make sense to describe a "core" bankruptcy proceeding as merely "related to" the bankruptcy case; oxymoron is not a typical feature of congressional drafting."   *Stern*, 131 S.Ct. at 2605. (citing Collier on Bankruptcy ¶ 3.02[2], p. 3–26, n. 5 (16th ed. 2010) ("The terms 'non-core' and 'related' are synonymous"); *see also id.,* at 3–26, ("The phraseology of section 157 leads to the conclusion that there is no such thing as a core matter that is 'related to' a case under title 11).   As the record reveals, the removed actions existed prior to the bankruptcy case, are based entirely on state law and will not be

---

(L)  confirmation of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate of the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P)  recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. §157(b)(2).

significantly affected by the outcome of the bankruptcy proceedings. *See Caperton v. A.T. Massey Coal Co.*, 270 B.R. 654, 657 (Bankr. S.D. W. Va. 2001); *Blackshire v. Litton Loan Servicing, L.P.*, No. 2:08-mc-0016, 2009 WL 426130, at *2 (S.D. W. Va. Feb. 13, 2009) (Goodwin C.J.).   Therefore, the Court finds that the removed actions are non-core.

Finally, the sixth factor requires that a proceeding be one that "can be timely adjudicated" in state court. Section 1334 does not offer any definition or guidance relative to the term "timeliness of adjudication."   However, another judge of this district has considered that "the proper focus is the impact the litigation will have on final resolution of the bankruptcy case. *Capterton*, 270 B.R. at 657. (citation omitted).   Encompassed in this consideration is whether "allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." *SunTrust Bank v. Ferrell*, No. 99-11104C-11G, 2000 WL 33673752, *2 (Bankr. M.D.N.C. Sept. 15, 2000).   "In determining whether the timely adjudication requirement is met, courts look at several factors, including: 1) any backlog in the state court system; 2) the status of bankruptcy proceedings; 3) the complexity of the issues brought in the action; and 4) whether the state court proceeding will lengthen 'the administration or liquidation of the estate.'" *Power Plant Entm't Casino Resort Indiana, LLC v. Mangano (In re XXX)*, 484 B.R. 290, 297 (Bankr. D.Md. 2012). (citations omitted.)   The Maryland Bankruptcy Court observed in its *Power Plant* decision that "[n]o binding precedent exists in the Fourth Circuit" relative to "which party bears the burden of proving whether or not timely adjudication can be met in state court [and that] the statute itself is silent on this point."   (*Id.*) (collecting cases where courts have expressly or implicitly considered the issue of which party must demonstrate that the matter can be timely adjudicated in state court.)   Noting the lack of uniformity among the district courts in the Fourth

18

Circuit on this issue, the Maryland Bankruptcy Court found compelling the rationale of the Second

Circuit in *Parmalat Capital Finance Ltd. v. Bank of America Corp.* (*Power Plant*, at 298-99) (*see*

*Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 582 (2nd Cir. 2011)

(wherein the circuit court offered guidance to the district court relative to considering the proper

party on which the burden should fall; the court offered that requiring the party seeking abstention

to carry the burden of demonstrating "timely adjudication" in state court "may . . . be inconsistent

with the mandatory nature of abstention under [Section] 1334(c)(2) as well as the principles of

comity, which presume that a state court will operate efficiently and effectively.") The *Power

Plant* court opined that:

> The idea that the party seeking mandatory abstention bears the
> burden of proof as to timely adjudication seemingly conflicts with
> the general rule that the 'burden of demonstrating jurisdiction
> resides with 'the party seeking removal.' If a party seeking to
> remove a case to federal court bears a general burden of proof to
> support removal, that party should have the burden to prove that
> timely adjudication is not likely in a state court in order to keep his
> case in federal court. This is especially true in light of the Supreme
> Court's mandate that federal courts should presume that state courts
> 'operate efficiently and effectively.' Requiring a mandatory
> abstention movant to prove the ability of a state court to adjudicate
> timely is contrary to the general presumption that a cause exists
> outside of the jurisdiction of the federal court. Accordingly, this
> Court determines that the better view is that there is a presumption
> that the state courts operate timely and efficiently and the party
> seeking abstention is not required to affirmatively prove this facet of
> the abstention test in the absence of evidence from the opposing
> party. In the instant case, because neither party offered evidence
> with respect to the ability of the state court to timely adjudicate this
> case, the Court will apply the presumption that the state court is
> capable.

(Power Plant, 484 B.R. at 298-99.).   This Court shares the concern noted by the *Power Plant* and

*Parmalat* Courts.   Dutch Run argues, but has not presented the Court with any evidence that

proceeding in the state court will prejudice the bankruptcy case. Thus, like the parties in *Power Plant*, neither of the parties in this case has offered evidence that a timely adjudication cannot be had in the state court.   There appears on the record to be no occasion in this case for duplicative motions practice, a new round of discovery or parallel adjudications.   There is nothing in the record that would support any finding that the state court will not be able to timely resolve these actions.   Indeed, prior to Defendant's filing of its Chapter 11 petition, the state court had scheduled a trial in each of the removed actions.   There is nothing in the record which suggests that the state court's docket is unduly congested such that timely establishment of trial dates would be precluded.   Moreover, the parties' dispute will not require resolution by a jury trial (as evidenced by the Pretrial Orders issued in the state court) and is not indicative of significantly complex issues of law.   To date, no trustee has been appointed in the bankruptcy case and a confirmation plan has not been established.   Upon consideration of the foregoing, the Court finds that the removed actions can be timely adjudicated in state court. The Court is not persuaded by any argument that the timeliness of the state court adjudication must be considered in light of the automatic stay at work in this matter.   Upon remand, Plaintiffs would be free to seek relief from the stay to proceed with litigation in the state court actions which appear to have been in the last stages of litigation. To allow the existence of the automatic stay to have a significant impact on consideration of this factor would render the mandatory abstention provision moot, as that argument could be made relative to every pre-petition civil action. Therefore, after careful consideration, the Court finds that each of the factors of mandatory abstention has been met. Thus, this Court is required to abstain from hearing this removed action, and a remand to the state court is warranted.

In light of this disposition, the Court need not make any findings with respect to Plaintiffs' assertion that permissive abstention and equitable remand principles apply to this case.   Likewise, the Court finds that Dutch Run's motion to transfer has been rendered moot.

*IV.     CONCLUSION*

For the reasons set forth above, the Court does hereby **ORDER** that Plaintiffs' *Motion to Abstain and Remand to Circuit Court for Greenbrier County, West Virginia* (Document 1-10) be **GRANTED** and that this action be **REMANDED** to the Circuit Court of Greenbrier County. The Court further **ORDERS** that Defendant/Debtor's *Motion for Change of Venue Pursuant to 28 U.S.C. § 1412 from the United States Bankruptcy Court for the Southern District of West Virginia to the United States Bankruptcy Court for the Southern District of Florida* (Document 1-5) be **DENIED AS MOOT**.

Further, the Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to the Honorable Ronald G. Pearson, to all counsel of record, to any unrepresented party, and a certified copy to the Clerk of the Circuit Court of Greenbrier County.

ENTER:   March 12, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

21
